UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

STARR SWANSON,

                          Plaintiff,                      Case No. C12-510-RSM-BAT

          v.                                              **REPORT AND
                                                          RECOMMENDATION**

MICHAEL J. ASTRUE, Commissioner of
Social Security,

                          Defendant.

Starr Swanson seeks review of the denial of her Disability Insurance Benefits application. She contends that the ALJ erred by (1) rejecting the opinions of her treating physician and treating psychologist and (2) finding Ms. Swanson not credible.  Dkt. 11.  As discussed below, the Court recommends the case be **REVERSED** and **REMANDED** for further administrative proceedings.

## I.     FACTUAL AND PROCEDURAL HISTORY

Ms. Swanson is currently 51 years old, completed 2 years of college, and has worked as a paralegal and administrative assistant.[1]  On December 15, 2008, she applied for benefits, alleging disability as of June 2, 2006.  Tr. 159.  Her application was denied initially and on reconsideration.  Tr. 93-101, 103-07.  The ALJ conducted a hearing on September 9, 2010, and

---

[1] Tr. 53, 159, 193.

REPORT AND RECOMMENDATION - 1

1   issued a decision on October 29, 2010, finding Ms. Swanson not disabled.  Tr. 93-101.  As the

2   Appeals Council denied Ms. Swanson's request for review, the ALJ's decision is the

3   Commissioner's final decision.  Tr. 1-6.

## II.   THE ALJ'S DECISION

Utilizing the five-step disability evaluation process,[2] the ALJ made the following findings:

> **Step one:**  Ms. Swanson had not engaged in substantial gainful activity since June 2, 2006.

> **Step two:**  Ms. Swanson had the following severe impairments: degenerative disc disease, status post foraminotomy, and status post hysterectomy.

> **Step three:**  These impairments did not meet or equal the requirements of a listed impairment.[3]

> **Residual Functional Capacity:**  Ms. Swanson had the residual functional capacity to lift and carry 10 pounds frequently and 20 pounds occasionally.  She had no sitting, standing or walking restrictions, and she could perform all posturals occasionally, except she could never climb ladders, ropes or scaffolds.  Right upper extremity overhead reaching and right upper extremity gross handling was limited to frequently.  She should avoid concentrated exposure to hazards.

> **Step four:**  Ms. Swanson could perform her past work and was thus not disabled.  Alternatively, as there are jobs that exist in significant numbers that Ms. Swanson could also perform, she was not disabled under the step-five framework as well.

Tr. 16-29.

## III.   DISCUSSION

### A.   Medical evidence

Ms. Swanson argues that the ALJ erred by rejecting the opinions of treating physician

Susan Casabona, M.D., and treating psychologist Sandra Saffran, Ph.D.

In general, the ALJ should give more weight to the opinion of a treating doctor than to

---

[2] 20 C.F.R. §§ 404.1520, 416.920.
[3] 20 C.F.R. Part 404, Subpart P. Appendix 1.

REPORT AND RECOMMENDATION - 2

that of a non-treating doctor, and more weight to the opinion of an examining doctor than to that of a non-examining doctor. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). Where it is not contradicted by another doctor, the ALJ may reject a treating or examining doctor's opinion only for "clear and convincing reasons." *Id.* at 830-31. Where contradicted, the ALJ may not reject a treating or examining doctor's opinion without "specific and legitimate reasons" that are supported by substantial evidence in the record. *Id.* at 830-31 (quoting *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)). An ALJ does this by setting out a detailed and thorough summary of the facts and conflicting evidence, stating her interpretation of the facts and evidence, and making findings. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). The ALJ must do more than offer her conclusions; she must also explain why her interpretation, rather than the treating doctor's interpretation, is correct. *Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007) (citing *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)).

       1.     *Dr. Casabona*

Dr. Casabona opined as to Ms. Swanson's limitations on numerous occasions. Ms. Swanson focuses her argument on a May 13, 2010, letter, which Dr. Casabona wrote to confirm that Ms. Swanson was to undergo spine surgery on May 19, 2010. Tr. 689. Dr. Casabona opined:

> She has been unable to work in any capacity doing even sedentary work, since August 2006, up until the present time. She is unable to function for the last one and one half years due to the neck pain, right arm pain and weakness. She experiences extreme arm and hand pain with routine daily activities and with self care. She has undergone all non surgical treatments including physical therapy, massage, acupuncture and various medications, without any improvement whatsoever. The neck and arm pain occurred as a result of the long term instability and weakness of her right leg and hip girdle and weakness of her core body muscles. The leg and hip girdle injuries were direct surgical complications of her June 2006 hysterectomy.

*Id.* The ALJ found that this statement was contradicted by Ms. Swanson's activities of daily

living and by her two trips to Hawaii and her trip to Texas.  Tr. 26.  The ALJ also found that Dr.

Casabona's opinions generally did not include narrative statements to explain her opinions and

did not cite to objective medical evidence to support her opinions.  *Id.*  The ALJ thus gave little

weight to Dr. Casabona's opinions.  *Id.*

An ALJ may reject a treating doctor's opinion that is unsupported by objective medical

evidence.  *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).  However, to merely state

that medical opinions are not supported by sufficient objective findings "does not achieve the

level of specificity our prior cases have required, even when the objective factors are listed

seriatim."  *Embrey*, 849 F.2d at 421-22.  Here, the ALJ made just such a conclusory statement,

rather than explaining why her interpretation of the medical evidence was correct and Dr.

Casabona's was not.  This was not a valid reason for rejecting Dr. Casabona's opinions.

An ALJ may also reject a treating doctor's opinion that is inconsistent with other

evidence in the record.  *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir.

2004).  However, the ALJ merely refers to her previous discussion of Ms. Swanson's daily

activities without explaining how the fact that Ms. Swanson carries on certain daily activities is

inconsistent with Dr. Casabona's statement.  Dr. Casabona stated that Ms. Swanson experienced

pain with daily activities and with self care, not that Ms. Swanson was unable to engage in daily

activities or self care at all.  Without further explanation, this was not a valid reason for rejecting

Dr. Casabona's opinions.

Similarly, the ALJ fails to explain how Ms. Swanson's trips were inconsistent with Dr.

Casabona's statement.  The fact that Ms. Swanson was able to travel on three occasions does not

undermine her doctor's opinion about her ability to function on an ongoing basis in a workplace

setting.  *Cf. Howard v. Heckler*, 782 F.2d 1484, 1488 (9th Cir. 1986) (ability to engage in

periodic restricted travel does not undermine claim of disability).  The ALJ failed to provide specific and legitimate reasons, supported by substantial evidence, to reject Dr. Casabona's opinions.

> ### 2.   *Dr. Saffran*

In a September 2009 letter to Ms. Swanson's long-term disability insurance carrier, Dr. Saffran stated that she had treated Ms. Swanson since 2006.  Tr. 744.  Dr. Saffran stated that she had diagnosed Ms. Swanson with post-traumatic stress disorder (PTSD) – chronic with delayed onset, and major depressive disorder – moderate, and that her symptoms met the standards set forth in the DSM-IV, but she declined to elaborate on the specific signs and symptoms of Ms. Swanson's psychiatric condition.  Tr. 745.  She opined that Ms. Swanson's "functional impairment from her mental/nervous conditions may vary from mild to severe, and may fluctuate over time. . . . The functional limitations [Ms. Swanson] may encounter could affect her cognitive, emotional, and social functioning, and may be temporary, recur episodically, or be long-lasting."  Tr. 745-46.  Dr. Saffran then listed how Ms. Swanson's "mental health disabilities may likely interfere with work related abilities" in numerous areas, including mental alertness, concentration and organization, dealing with stress and anxiety.  Tr. 746-47.  She concluded:

> At this time, as [Ms. Swanson's] psychiatric treatment provider, I cannot ethically allow her to return to work until her psychological stress and symptoms associated with PTSD have been stable over time.  Again, the literature is well established in the findings that individuals who experience psychological stress, such as those listed above, may simply be having a bad day or a bad week or may be working through a difficult time in their lives, but if this pattern continues for a long period may indicate [sic] an underlying mental health disorder.

Tr. 748.

In a July 2009 opinion, Dr. Saffran assigned Ms. Swanson a global assessment of functioning ("GAF") score of 58, indicating moderate symptoms or moderate difficulties in

social, occupational, or school functioning, and stated that her low score in the precious year was 48, indicating serious symptoms or a serious impairment in social, occupational, or school functioning.  Tr. 683; Am. Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders (DSM-IV), 34 (4th ed. text rev. 1994).

The ALJ found at step two that Ms. Swanson had the medically determinable mental impairments of depression and anxiety, but that, considered singly and in combination, they did not cause more than a minimal limitation in her ability to perform basic mental work activities and were therefore not severe.  Tr. 22.  In making this finding, the ALJ considered Dr. Saffran's September 2009 opinion, finding that it did not cite to any objective mental health testing, her opinion that Ms. Swanson "may" have problems was speculative, and it provided no objective basis for her opinion that Ms. Swanson was unable to return to work.  Tr. 23.  The ALJ therefore gave the opinion little weight.  *Id.*  The ALJ did not address Dr. Saffran's July 2009 opinion.

At step two, the claimant must show that (1) she has a medically determinable impairment or combination of impairments, and (2) the impairment or combination of impairments is severe.  *See Bowen v. Yuckert*, 482 U.S. 137, 146 (1987); 20 C.F.R. § 416.920(c).  An impairment is severe if it significantly limits the claimant's physical or mental ability to do basic work activities.  20 C.F.R. § 416.920(c), 416.921(a).  An impairment or combination of impairments can be found "not severe" only if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work.  *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996).  The step-two inquiry is "a *de minimis* screening device to dispose of groundless claims."  *Id.*  It is not an inquiry as to whether the impairment is disabling or not.

Dr. Saffran opined that Ms. Swanson's mental impairments, including PTSD—which the ALJ did not address—would limit her ability to function to such an extent that she could not

REPORT AND RECOMMENDATION - 6

work.  Dr. Saffran also opined that Ms. Swanson's mental conditions had moderately to severely

impaired her functioning over the course of a year.  These opinions were sufficient evidence to

pass the de minimis screening test and show that Ms. Swanson's claims of mental impairment

were not groundless.  But the ALJ failed to consider Dr. Saffran's July 2009 opinion.  And the

qualified nature of Dr. Saffran's September 2009 opinion is more properly considered when

assessing the weight to give it in determining Ms. Swanson's residual functional capacity.  The

ALJ erred by rejecting Dr. Saffran's opinions outright at the initial, screening stage of the

process.

### B.      Ms. Swanson's credibility

Ms. Swanson also argues that the ALJ improperly found her not credible.  The ALJ did

not find that Ms. Swanson was malingering.  Thus, the ALJ was required to provide clear and

convincing reasons to reject her testimony.  *See Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th

Cir. 2001).  An ALJ does this by making specific findings supported by substantial evidence.

"General findings are insufficient; rather, the ALJ must identify what testimony is not credible

and what evidence undermines the claimant's complaints."  *Lester*, 81 F.3d at 834.

The ALJ gave several reasons for finding Ms. Swanson not fully credible.  The ALJ

found that the medical record showed that Ms. Swanson's mental and physical symptoms were

controlled with medication.  Tr. 25.  The ALJ noted that Ms. Swanson's surgeon, Jayashree

Srinivasan, M.D., reported after her May 2010 surgery that Ms. Swanson's arm symptoms had

improved and Flexeril helped her pain, and that Dr. Casabona also reported improvement after

the surgery and reported in February 2010 that Ms. Swanson's depression was fairly well

controlled on Zoloft.  *Id.*  The type of treatment and the effectiveness of medication are factors

the ALJ may consider in assessing credibility.  20 C.F.R. § 404.1529(c)(3).  The ALJ thus could

REPORT AND RECOMMENDATION - 7

consider the findings of improvement after surgery.  However, this consideration is only relevant to the period after the surgery, which took place only four months before the hearing and five months before the ALJ issued the decision.  The ALJ could also consider Dr. Casabona's opinion about the effectiveness of Zoloft on Ms. Swanson's depression.  However, this opinion did not address the effectiveness of medication on Ms. Swanson's anxiety or PTSD.  Therefore, while the effectiveness of medication was a valid consideration in evaluating Ms. Swanson's credibility, it only addressed a limited part of the credibility picture.

The ALJ found that Ms. Swanson's activities of daily living indicated she was not as disabled as she alleged.  Tr. 25.  The ALJ noted that Ms. Swanson took care of her cat and her dog, performed her own personal care activities, prepared simple meals, did laundry, dishes, and light housework, and was able to drive a car, shop in stores and online, and spend time with family and friends.  *Id.*  Daily activities that are transferrable to a work setting may be grounds for an adverse credibility finding.  *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989).  But daily activities that do not contradict a claimant's other testimony or meet the threshold for transferrable work skills cannot form the basis of an adverse credibility determination.  *Orn*, 495 F.3d at 639.  These daily activities were not transferrable to a work setting.  And the ALJ did not identify any contradiction between Ms. Swanson's testimony and her other statements about these activities.  Thus, the mere fact that Ms. Swanson carried on certain daily activities was not a valid reason to question her credibility.

On the other hand, the ALJ also found that Ms. Swanson was very active in the legal aspects of her divorce and "spent three days in her attorney's office" preparing for her hearing.  Tr. 25.  Ms. Swanson reported this activity to her therapist in February 2009.  Tr. 764.  She also reported doing her own paralegal work for her divorce in October and November 2008, stating

1    that doing the work was "very bothersome" and caused pain to radiate through her arm.  Tr. 560,

2    556.  Even though she reported that the paralegal work caused her pain, it was an activity

3    transferrable to a work setting.  Her ability to engage in it was a valid ground for the ALJ to

4    discount her credibility.

5        The ALJ also found that there were numerous inconsistencies in the record that

6    undermined Ms. Swanson's credibility.  Inconsistencies in the evidence can be a valid reason for

7    discounting a claimant's credibility.  *See Smolen*, 80 F.3d at 1284.  The ALJ found that Ms.

8    Swanson reported that standing causes her pain, but also reported that she is able to walk for one

9    mile and that walking helps her pain, which the ALJ concluded were conflicting statements.  Tr.

10   25.  But these statements are not inconsistent.  Walking and standing are different activities.  It is

11   not inconsistent that a claimant may more easily tolerate the movement involved with walking

12   than the immobility of standing.  This was not a valid reason to find Ms. Swanson not credible.

13       The ALJ also found that Ms Swanson completed her initial questionnaire for physical

14   therapy on September 24, 2008, but did not begin attending therapy until June 2009, and later

15   stopped attending therapy for three months, from April to July 2010.  Tr. 25.  But a review of the

16   record shows that this finding is factually incorrect.  Ms. Swanson in fact attended her first

17   therapy session on September 29, 2008, and attended multiple times per month from that date

18   through June 2009.  Tr. 883-91.  Ms. Swanson also attended physical therapy multiple times in

19   June 2010, leaving a gap only for the month of May, contradictory to what the ALJ found.  Tr.

20   874.  This finding of inconsistency was factually incorrect and therefore not a valid reason to

21   find Ms. Swanson not credible.

22       The ALJ found that Ms. Swanson's various trips further undermined her credibility,

23   referring to her two trips to Hawaii and one trip to Texas during the alleged disability period.  Tr.

REPORT AND RECOMMENDATION - 9

26. But an ALJ may not discount a claimant's credibility based on a capacity to engage in periodic restricted travel. *Howard*, 782 F.2d at 1488. This was not a valid reason to discount Ms. Swanson's credibility.[4]

Although the ALJ relied one valid and one partially valid reason to find Ms. Swanson not fully credible, she relied primarily on reasons that were invalid. An ALJ's use of an invalid reason for finding a claimant not credible may be harmless if the remaining reasons and the ultimate credibility finding were supported by substantial evidence. *See Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1162-63 (9th Cir. 2008). Here, the ALJ's reliance on invalid reasons outweighed her reliance on valid ones. Given that fact, coupled with the error at step two in assessing Ms. Swanson's mental impairments, the Court cannot say with confidence that, excluding the invalid reasons, there remains substantial evidence to support the ALJ's conclusion. The Court therefore finds the ALJ's errors in evaluating Ms. Swanson's credibility were not harmless and the issue should be reconsidered on remand.

## IV.   CONCLUSION

For the foregoing reasons, the Court recommends that the Commissioner's decision be **REVERSED** and the case be **REMANDED** for further administrative proceedings. The Court may remand for an award of benefits where "the record has been fully developed and further administrative proceedings would serve no useful purpose." *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002) (citing *Smolen*, 80 F.3d at 1292). This occurs when: (1) the ALJ has

---

[4] Ms. Swanson states in her brief that the ALJ rejected the lay witness statements she submitted regarding her trips "based on the same erroneous analysis." Dkt. 11 at 8. She does not present any argument or authority specific to this assertion. Claims that are unsupported by explanation or authority may be deemed waived. *See Avila v. Astrue*, No. C07-1331, 2008 WL 4104300 (E.D. Cal. Sept. 2, 2008) at *2 (unpublished opinion) (citing *NW Acceptance Corp. v. Lynnwood Equip., Inc*., 841 F.2d 918, 923-24 (9th Cir. 1996) (party who presents no explanation in support of claim of error waives issue); *Independent Towers of Wash. v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003)). The Court rejects this argument as waived.

failed to provide legally sufficient reasons for rejecting the claimant's evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled if he considered the claimant's evidence. *Id*. at 1076-77. The Court concludes it is appropriate to remand this case for further proceedings. On remand, the ALJ should (1) reevaluate Ms. Swanson's mental impairments as severe impairments, (2) reevaluate the opinion of Dr. Casabona, (3) reevaluate Ms. Swanson's credibility, and (4) proceed with the remainder of the five-step evaluation process as necessary.

A proposed order accompanies this Report and Recommendation. Objections, if any, to this Report and Recommendation must be filed and served no later than **November 14, 2012.** If no objections are filed, the matter will be ready for the Court's consideration on **November 16, 2012**. If objections are filed, any response is due within 14 days after being served with the objections. A party filing an objection must note the matter for the Court's consideration 14 days from the date the objection is filed and served. Objections and responses shall not exceed twelve pages. The failure to timely object may affect the right to appeal.

DATED this 31st day of October, 2012.

BRIAN A. TSUCHIDA
United States Magistrate Judge

REPORT AND RECOMMENDATION - 11